[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10447
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2010
JOHN LEY
CLERK

Agency No. 8818-08

DONALD W. WALLIS,
KATHRYN W. WALLIS,

                                              Petitioners,

versus

COMMISSIONER OF THE INTERNAL REVENUE SERVICE,

                                              Respondent.

_____

Petition for Review of a Decision from the
United States Tax Court

_____

(August 11, 2010)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Donald W. Wallis and his wife Kathryn W. Wallis appeal pro se the Tax Court's order finding an income tax deficiency of $27,305 for 2005 and an accuracy-related penalty of $5,461, pursuant to 26 U.S.C. § 6662. After review, we affirm.[1]

## I. BACKGROUND

From 1991 until 2003, Donald Wallis, a tax lawyer, was an equity partner at the law firm of Holland & Knight ("H&K"). The tax deficiency relates to the Wallises' failure to report $80,000 in "Schedule C" payments H&K made to Donald Wallis in 2005. The issue is whether these Schedule C payments were taxable as ordinary income or as long-term capital gains.

In accordance with two partnership agreements Wallis entered with H&K, when he withdrew, he would receive the value of his partnership interest in the firm. The partnership agreement stated that an equity partner's interest was the value of his capital account and the value of his "Schedule C units."

Under Schedule C of the partnership agreement, H&K awarded each equity partner fifty Schedule C units per year, valued at $300 per unit or $15,000 per

---

[1] We review the Tax Court's legal conclusions de novo and its factual findings under the clearly erroneous standard, even when, as here, those factual findings are based on a fully stipulated record. Fla. Hosp. Trust Fund v. Comm'r, 71 F.3d 808, 810 (11th Cir. 1996). A finding of fact is clearly erroneous if it is not supported by substantial evidence and a review of the record as a whole leaves us with "the definite and firm conviction that a mistake has been committed." Creel v. Comm'r, 419 F.3d 1135, 1139 (11th Cir. 2005) (quotation marks omitted).

year.  The value of these units generally was payable in quarterly installments after a partner died, became disabled, was expelled or turned 68 years old.  H&K did not set aside funds correlating to these Schedule C units.

On March 19, 2003, Wallis withdrew from H&K.  At the time, Wallis's capital account balance was $98,161.75 and his Schedule C units were valued at $240,000.  Beginning in 2003, Wallis received quarterly payments of $28,180.15, $8,180.15 of which was return of his capital account and $20,000 of which was payment for his Schedule C units.  In 2005, H&K made four payments, totaling $80,000, for Wallis's Schedule C units.  H&K issued to Wallis, and filed with the IRS, a Form 1099-MISC reflecting the Schedule C payments as "nonemployee compensation" and deducted these amounts from its own income on its partnership return.  The Wallises did not report these Schedule C payments as income on their 2005 tax return.

Based on the parties' stipulated facts and the documentary evidence, the Tax Court found that the $80,000 in Schedule C payments were retirement payments paid to Wallis as a withdrawing partner as part of the liquidation of his partnership interest.  As such, the Tax Court concluded that the Schedule C payments were "guaranteed payments" under 26 U.S.C. § 736(a)(2) to be taxed as ordinary income pursuant to 26 U.S.C. § 707(c).

3

## II.  DISCUSSION

A.  **Guaranteed Payments v. Partnership Distributions**

On appeal, the Wallises argue that the Tax Court wrongly characterized the $80,000 in Schedule C payments as "guaranteed payments" and that they are properly characterized as "partnership distributions" under 26 U.S.C. §§ 731 and 736(b)(1), which are taxed as long-term capital gains pursuant to 26 U.S.C. § 1222(3).

Under § 736 of the tax code, payments made "in liquidation of the interest of a retiring partner" are characterized three different ways.  See 26 U.S.C. § 736(a) & (b).  Generally, a payment made in exchange for the interest of a retiring partner are considered: (1) a "distributive share" if it was "determined with regard to the income of the partnership"; or (2) a "guaranteed payment" under § 707(c) if it was "determined without regard to the income of the partnership"; or (3) a "distribution by the partnership and not as a distributive share or guaranteed payment," if it was "made in exchange for the interest of such partner in partnership property."  Id. § 736(a)(1)-(2), (b)(1).[2]

---

[2]If the partnership is a personal services partnership and the retiring partner is a general partner, then amounts paid for "unrealized receivables" and "good will" are not considered payments made in exchange for an interest in partnership property.  Id. § 736(b)(2).

4

The Tax Court found the Schedule C payments were "guaranteed" payments. If the payment is characterized as a "guaranteed payment," then 26 U.S.C. § 707(c) provides that it is taxed as ordinary income to the partner, pursuant to 26 U.S.C. § 61(a), and the partnership may deduct the payment as a trade or business expense, pursuant to 26 U.S.C. § 162(a). 26 U.S.C. §§ 707(c) & 736(a)(2); see also Treas. Reg. § 1.707-1(c) (noting that guaranteed payments are ordinary income to the partner).[3]

However, the Wallises claim that the payments were partnership distributions. If a payment is characterized as a partnership distribution, it is treated like a distribution in complete liquidation under 26 U.S.C. §§ 731, 732 and 751. Treas. Reg. § 1.736-1(a)(2). As such, the partner recognizes a taxable gain only to the extent that the amount received exceeds his adjusted basis in the partnership property. 26 U.S.C. § 731(a)(1). Because any gain recognized under § 731 is treated like a gain for the sale or exchange of a partnership interest, it is

---

[3]Section 707 governs the tax consequences of transactions between a partner and his partnership when the partner is not acting in his capacity as a partner. 26 U.S.C. § 707(a). Under § 707(c), if payments to a partner for services or the use of capital are made without regard to the partnership's income, those payments "shall be considered as made to one who is not a member of the partnership" for purposes of 26 U.S.C. § 61(a), governing the recognition of income, and 27 U.S.C. § 162(a), governing deductions for trade or business expenses. Id. § 707(c). Given that the tax code under certain circumstances treats transactions between a partner and the partnership as between a non-partner and the partnership, we reject the Wallises argument that Subchapter K provides the only rules governing the income tax treatment of such transactions.

considered a gain from the sale or exchange of a capital asset. Id. §§ 731(a), 741. Therefore, if the partner holds his partnership interest for more than one year, his gain will be taxed as a long-term capital gain. 26 U.S.C. § 1222(3). Under these circumstances, the remaining partners are not permitted a deduction. Treas. Reg. § 1.736-1(a)(2).

**B.     Schedule C Payments**

Here, there was ample evidence in the partnership agreements and stipulated facts to support the Tax Court's finding that Donald Wallis's Schedule C payments were guaranteed payments.[4] Under the H&K partnership agreements, Schedule C units were awarded each year in fixed amounts ($15,000 per year) and ultimately paid to the withdrawing partner without regard to the partnership's income or the partner's particular equity share. H&K considered the Schedule C payments to be additional taxable compensation, as reflected in the 2005 Form 1099-MISC H&K issued to Wallis and filed with the IRS.[5] In addition, H&K

---

[4]The Wallises' argument that the Tax Court failed to address whether Schedule C payments were "payments made in liquidation of the interest of a retiring partner" is without merit. Because the Tax Court determined that the Schedule C payments were guaranteed payments, it necessarily concluded that those payments were payments made in liquidation of the interest of a retiring partner. See 26 U.S.C. § 736(a)(2) (defining guaranteed payments as a subset of payments made in liquidation of the interest of a retiring or deceased partner).

[5]Although the Wallises suggest the parole evidence rule precluded the Tax Court from considering H&K's subjective beliefs, they provide no argument or citations to authority on this point. Therefore, we do not address it. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to consider issue identified in brief, but not elaborated upon

deducted the amount of the Schedule C payments (but not the amounts paid for Wallis's capital account) from its own income. See Miller v. Comm'r, 376 F.2d 255, 256-57 (5th Cir. 1967) (noting that a partnership's deduction of payments as expenses was evidence that payments should be characterized as guaranteed payments).[6]

In addition, the Tax Court did not err in concluding that, while Schedule C payments were made in exchange for Wallis's interest in the partnership generally, they were not made in exchange for his interest in "partnership property," and, thus, were not a partnership distribution.[7] Notably, the parties' stipulation referred to the Schedule C units as a "benefit or entitlement." That benefit could be forfeited if a partner voluntarily left the partnership. Because they could be forfeited, H&K did not consider Schedule C units to be income to the partners in the year they were awarded. Furthermore, H&K did not set aside funds corresponding to future Schedule C payments. Finally, as the Tax Court pointed

---

in argument on the merits); Fed. R. App. P. 28(a)(9)(A).

[6] Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] Because the Tax Court determined that the payments were not in exchange for partnership property, it did not need to address the subsidiary question of whether the payments were made in consideration for unrealized receivables or goodwill.

7

out, the payments appeared to be designed as a benefit similar to a retirement benefit.

Contrary to the Wallis's assertion, there is sufficient evidence to support the Tax Court's finding that the Schedule C payments, rather than being amounts paid for Wallis's interest in firm property, were essentially a retirement benefit. The H&K partnership agreements provided that (1) eligibility for Schedule C payments was, at least in part, tied to a partner turning 68 years old; (2) Schedule C obligations could be funded through a qualified defined benefit plan that would pay both Schedule C and monthly retirement benefits; (3) if a defined benefit plan was established, funds previously set aside to pay monthly retirement benefits under a discontinued retirement plan could be contributed to the defined benefit plan; and (4) the same monthly payment limits were placed on both retirement benefits and Schedule C payments.

The Wallises counter that there was "sufficient evidence to support the conclusion" that the "actual object" of the transactions was Wallis's interest in partnership property. However, the Wallises do not point to any particular evidence in the record linking the payments to Wallis's interest in any property held by H&K. In any event, even assuming the Wallises were correct, this does not show that the Tax Court's contrary conclusion was clearly erroneous. See

Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985) (explaining that a factfinder's choice between two permissible views cannot be clearly erroneous).[8]

## C.    Accuracy-Related Penalty

The Wallises challenge the Tax Court's imposition of an accuracy-related penalty pursuant to 26 U.S.C. § 6662(a).  Section 6662 imposes a twenty percent penalty on the amount of any underpayment that is the result of, inter alia, (1) "[n]egligence or disregard of rules or regulations" or (2) "[a]ny substantial understatement of income tax."  26 U.S.C. § 6662(b)(1)-(2).  However, no penalty is imposed on any portion of an underpayment for which the taxpayer has "reasonable cause" and "acted in good faith."  26 U.S.C. § 6664(c)(1). Reasonable cause and good faith may be indicated where the taxpayer has "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Treas. Reg. § 1.6664-4(b)(1).  Where the underpayment relates to an item reflected on the return of a pass-through entity, such as a partnership, the

---

[8]The Wallises contend that the Tax Court erred by declining to address whether the Commissioner had the burden of production as to the deficiency, pursuant to 26 U.S.C. § 6201(d), and the burden of proof, pursuant to 26 U.S.C. § 7491(a).  Any error in this regard was harmless given that the Commissioner actually satisfied both burdens based on the stipulated facts and the partnership agreements.

9

partnership's treatment of that item is a relevant consideration when determining whether the taxpayer acted with reasonable cause and in good faith. Treas. Reg. § 1.6664-4(e). The Commissioner has the burden of production with respect to a taxpayer's liability for a penalty. 26 U.S.C. § 7491(c).[9]

The Wallises do not challenge the finding that their underpayment was the result of negligence and disregard of the tax code or regulations and was a substantial understatement. Instead, they argue that they had "reasonable cause" and "acted in good faith" pursuant to § 6664(c)(1). We review for clear error the Tax Court's factual finding whether an additional tax is due as a penalty. Patterson v. Comm'r, 740 F.2d 927, 930 (11th Cir. 1984).

Section 6222 provides a means for a partner to inform the IRS when his own treatment of a partnership item "is (or may be) inconsistent with the treatment of the item on the partnership return." 26 U.S.C. § 6222(b)(1). Given that Donald Wallis has 35 years of experience as a tax lawyer, the Tax Court reasonably could conclude that Wallis should have been aware there were inconsistencies between (1) his not reporting the Schedule C payments at all to the IRS and (2) the income Form 1099 he received from H&K. See Treas. Reg. 1.6664-4(b)(1).

---

[9] The Wallises' contention that the Tax Court failed to impose the burden of production upon the Commissioner as to the penalty is without merit. The Tax Court stated in its opinion that the Commissioner had the burden of production and then concluded that the Commissioner had met that burden.

10

The Wallises argue that they had no obligation to report under § 6222 because their inconsistency was with H&K's Form 1099-MISC, not with H&K's 2005 return.  Nonetheless, § 6222 requires partners to report even <u>possible</u> inconsistencies to the IRS if they wish to treat partnership items differently on their own return from the partnership's return.  And, Wallis's receipt of the Form 1099-MISC should have alerted him that the Schedule C payments would be reflected as deductions on H&K's partnership return.  Rather than alerting the IRS to Wallis's (now-abandoned) theory that the payments did not represent taxable income, the Wallises made no mention of the Schedule C payments when they filed their return.  Under the circumstances, the Tax Court did not clearly err in finding that the Wallises did not have reasonable cause for the underpayment or act in good faith with respect to it.

**AFFIRMED.**